Watch out for the right there, sir. Good evening, here to give you this honorable telephoto of the second fugitive is now back in session, the Honorable Anne B. Jorgensen. Please be seated. On this final occasion we've got this morning two judges from the court that 0-0-0-5 people of the state of Illinois claim to have believed the Terry T. Collins defendant's appellate. On behalf of the appellate, Mr. Zachary Wallace. On behalf of the appellate, Ms. Diane L. Campbell. Again, are both sides ready to proceed? All right. Being counsel, when you're ready to proceed. Good morning, Your Honors. Counsel. And may it please the Court. It is impossible to carry a gun without possessing said gun. One could think of no scenario where one could carry a firearm without also necessarily possessing the firearm. And the state has failed to provide any example of how this could be possible as well. Yet here, the trial court denied Collins' motion to dismiss the severed weapons charge. Because while recognizing that the jury has already resolved the question of whether Collins possessed a firearm, the court believed that carrying a firearm as required for aggravated unlawful use of weapon was a different issue that would require different proof. However, because it would be impossible to prove that Collins knowingly carried a firearm without proving that he possessed said firearm, the trial court erred in denying the motion to dismiss as this issue has already been resolved at the first trial. Importantly, the aggravated unlawful use of weapon statute does not define the terms carry and possess. However, it does use these terms throughout the statute interchangeably. In the statute, it says that the defendant violates it if he knowingly carries a firearm in a vehicle, locked glove box, trunk. But it also goes on to say, and if the person or individual possessing the firearm does not have a valid FOIA card. So even the language of the statute, where the legislature uses these terms interchangeably, shows that the person carrying the firearm is also possessing this firearm. So it means the same thing? It means the same thing in the sense that possession encompasses carrying. There probably or there could be certain situations where you could possess a firearm without carrying that firearm, but you can't carry the firearm without possessing it. So in regard to this carrying and possession, yes. The Supreme Court, the United States Supreme Court, in Bravo-Fernandez v. United States, they said, they quote, because of the absence of appellate review, we have cautioned and called for guarded application of the preclusion doctrine. Isn't that really what the judge is doing here? He was being very cautious about applying collateral stop or issuing preclusion here, because he said it's different. Possession and carrying are different. Well, correct, Your Honor. He does say possession and carrying is different, although he's right about that. Carrying is more, right? Or can be more. Can be more. Yes, and it's different in name. But it's important to note that he also applies issue preclusion in the other charge. What if the State had flipped one of the other occupants of the vehicle and testified with testimony that he or he or the passenger or the driver saw the defendant actually in physical possession of the firearm instead of constructive possession, that it was actually on his person? Would that make a difference? Because that would be, he was, he had been carrying the firearm. He placed it in the vehicle after carrying it. And this would be testimony that was not presented at the first trial?  Well, Your Honor. Would the United States Supreme Court's caution apply? I believe that the United States Supreme Court's caution would not apply because in that scenario it actually highlights how by not precluding these issues, you completely force the defendant, I mean, you're essentially, in this instance, the case has the same facts. They try to prove he possesses it. They present their case to a jury of his peers. There's nothing about this trial that's unfair at that point. He's acquitted. Allowing the State to then flip the witness' testimony or change it. What if that witness was not available at the first trial? Well, there's no indication that the State is. I mean, we're speculating here. We don't know what the State's evidence would be at the second trial. They could put one of those witnesses on the stand and say he had the gun. He put it in the car. Correct. Although, there is no indication the State has that evidence. Well, they might. Well, when the court barred the conviction because they said this issue's been decided, it's collaterally stopped. The State did not at any point argue or in the briefs argue there's other evidence here. There's a different theory to charge or there's new evidence. So there is no indication that exists. Now, to answer the hypothetical question, as an initial matter, it would come out at trial. Here, what we have is, you know, the court applied prior or settled before and is being guarded in that, you know, the court presumably is, you know, wants to ensure this is the issue that was decided. But it's important to note the court, in being cautious, does determine the jury's found this issue of possessing a firearm. The basis for not applying this here is because the court believes that the issue of carrying is different. And while, yes, it's a different term, the issue of whether he possessed it necessarily encompasses it. It's essentially doing the same thing that would be done in the first charge, which was dismissed out by trying him here, because, okay, it's carrying, but we're relitigating the issue of whether he possessed it, because to carry it necessitates he possesses this firearm. And that's — and it's important, in addition to the legislature using these terms interchangeably, for moving purposes of one act, one crime, aggravated and lawful use of weapon, and weapon possession or filing is merged as it's — the act of carrying and possessing is the same act. So there — it's largely being construed this way. And it's important to note that when you're conducting this collateral or settle analysis or you're determining whether the issue sought to be precluded is the same issue that was already decided, you don't conduct the analysis with a hyper-technical and archaic approach of a 19th century pleading book. You use rationalism — or rationality and realism. And here, yes, the terms are different in name, but using realism and rationality, it's clear that you can't present evidence that he carried a firearm without presenting evidence he possessed it. If the jury in the first trial would have found he was carrying the firearm, for instance, it would have convicted the defendant that that's possession that he's carrying it. So that issue's already been decided. And because of that, as the court did with the Floyd card charge, it should have granted dismissal in this case. Turning to Currier, I would welcome any questions this Court has regarding the effect of Currier on this case. However, if there are no questions on Currier, I would just stand on the briefs and the argument made in the prior case on that particular issue. If this Court has no further questions, okay, we would just ask that for the reasons discussed, this Court reverse the trial court's order denying Collins' motion to dismiss the severed weapons charge. Thank you. Good morning, Your Honors. My name is Diane Campbell. I'll be representing people today. I'm going to address my lack of jurisdiction argument and then the carry versus possession issues. Defendant acknowledges that Illinois is in limited lockstep with the U.S. Supreme Court, and that's in Caballos at 313 to 314, and that at their brief at 33, that the Illinois Supreme Court must adopt U.S. Supreme Court interpretations, and at their brief at 38 and their implied brief at 13, that the appellate court is bound by Caballos. In this case, Currier is directly on point. It holds that the critical difference between Ash and Currier is that the defendant consented to separate trials. That's at 500. It cites Jeffers, and that holds that it's different when defendant consents to two trials where one would have done. If a single trial on multiple charges should suffice to avoid a double jeopardy complaint, there is no violation of the double jeopardy clause when defendant elects to have trial offenses tried separately, and the trial court honors that election. That's at 500 to 501. Consenting to two trials when one would have avoided a double jeopardy problem precludes any constitutional violation associated with holding a second trial. Defendant wins a potential benefit and experiences none of the oppression the double jeopardy clause seeks to prevent. That's at 502. And then finally, defendant's consent dispels any specter of double jeopardy abuse that holding two trials might otherwise present. That's at 502 again. The double jeopardy clause, which guards against government oppression, does not relieve a defendant from the consequences of his voluntary choice. In the Kennedy concurrence, Justice Kennedy says there's a strong public interest in giving prosecution one complete opportunity to convict those who have violated its laws. The reason that single opportunity did not occur in Currier was because both parties consented to sever the possession of a double jeopardy charge to avoid producing evidence of petitioner's prior conviction during his trial for burglary and larceny. Petitioner acknowledges that by consenting to severance, he cannot argue that the double jeopardy clause bars the second trial. That's at 511. Double jeopardy cannot be expanded to include situations where defendant is responsible for the second prosecution. Again, at 511. The end result is that when defendant's voluntary choices lead to the second prosecution, he cannot later use the double jeopardy clause, whether thought of as protecting against multiple trials or relitigation of issues, to forestall that second prosecution. That's at 512. Here, Illinois Supreme Court Rule 604F says the defendant may appeal to the appellate court the denial of a motion to dismiss on grounds of double jeopardy. Here, Currier specifically bars defendant raising a double jeopardy claim where he has consented or moved to sever. The appellate court has jurisdiction to hear only what a defendant can appeal. If the defendant cannot appeal on double jeopardy claims when the trials are severed, this appellate court lacks jurisdiction to hear this appeal. Counsel, do you view Currier as an outright bar if in any circumstance in which the defendant requests severance? Yes. In part, going a little into the issue of preclusion, the fact is, this is from Currier again at 510, the fact is that civil preclusion principles and double jeopardy are different doctrines with different histories serving different purposes. Double jeopardy in criminal cases involves more than judicial economy by preventing needless litigation in civil cases where only money is at stake. Criminal cases involve more than economy. They balance vital interests against abusive prosecution practices with considerations of public safety. That's at 410 in Currier. Currier goes to jurisdiction, not just merits. If Your Honors don't have any questions, I'll proceed to the Currier v. Possession. Any questions on that point? No. The Supreme Court has acknowledged and has allowed appeals involving a preclusion, have they not? I think under Currier, that it should be barred. It should be barred. Exactly. That aspect of Currier is not binding authority. I believe it should certainly be at least highly persuasive, if not binding. There's no question about that, but it's not binding. And where there's a conflict, we're bound by Illinois Supreme Court precedent, are we not? Yes. And that is Jones and Powell. And again, this Court does, I realize that the State filed its motion to dismiss earlier, but it is incumbent on this Court to examine its jurisdiction at every case. For the Currier v. Possession, whether a person can carry without possession is a question of fact for the jury. And carrying a gun in a car is a far different scenario than the defendant possessing a gun on his person. We both cite the Black's Law for the definitions. Carry is to possess and convey a firearm in a vehicle, including a locked glove compartment or the trunk of a car. Possession is to have in one's control to have possession of. In Thompson, it further defines possession to have in one's control at 32 and exercise some dominion over, such as having on the person. That's at 33. Peeble v. Thompson, it's a 2023 First District. It is currently on appeal. And the context is very different there, because the argument there was whether the State had a higher burden of proof for carry or possession. But it does extend some enlightenment, because in that case, the defendant both carried in his vehicle and he had actual possession of a firearm. And in Thompson, the State did not advance a constructive possession theory. That's at 36. The evidence at that trial showed actual possession. A person in the defendant's vehicle fired at the victim's vehicle. When the car was stopped, the defendant's finger was bleeding. The defendant's blood was on the trigger of the gun, and the defendant had shotgun residue on both of his hands. That evidence proved actual possession by the defendant. But there was also carrying in the vehicle evidence. And that is that it was the defendant's vehicle, and the gun was found in a locked glove compartment. So the defendant there had both actual possession, and he carried in his vehicle. So the evidence can be very different to prove up those two propositions. And that is what the trial judge was focusing on here, that the offenses were different. The questions faced by the jury would be different, and that they could easily come to the conclusion that he, in fact, had carried the gun in the vehicle. But in the context of a constructive possession case in a vehicle, how does the Venn diagram differ from the Venn diagram in a vehicle? How is it different between one and the other? Well, I think in this case, you know, Thompson does demonstrate it. The defendant can have actual physical possession. Right, but here he does, and we're talking about constructive. So how is constructive different from in the vehicle? Well, constructive possession, the defendant gave the example that he could have possession without carrying it by having the gun in his safe at home. My counter argument would be that if Justice Burkett had a firearm, he carried it over to you. The jury could logically find that he did not intend to have actual possession or exert dominion over the gun. He merely carried it over to you, who then had the actual possession. So I think in various different scenarios, carrying a gun in a vehicle can be very different than the defendant possessing it on his person. In this case, the defendant was the sole occupant of the back seat. There was a fold down to the trunk area, and in the trunk area, there was the gun, which was located in a safe. In the trunk area, there was the gun, which was located in a backpack or case. Right, which he described and all that. But aren't these the facts leading to a conclusion of constructive possession, just as they would be for carrying in a motor vehicle? Well, in this case, the possession or the carrying is a question of fact for the jury. They would come to a totally different conclusion. They would have separate instructions from the trial court regarding, you know, the requirements for approving the offense. So in this case, possession, actual possession is very different than carrying in a vehicle. I think, you know, this case in particular and the Jones case also are prime examples of that fact. Differentiation. Defendant refers to the Jones test, and that Jones provides that defendants in Illinois cannot challenge legally inconsistent verdicts with acquittals on other charges. That's at 133 to 134. And it also says the court should examine the record of prior proceedings and determine whether a rational jury could have grounded its verdict on an issue other than the one defendant seeks to foreclose for consideration. That's at 139. The party seeking collateral estoppel must show the issue was raised and litigated in a previous proceeding, the termination of the issue was critical and necessary part of the final judgment, and that the issue sought to be precluded in the later trial is the same as decided in the previous trial. Here it is not the same issue that is being decided. I agree with my opponent that the court should not apply a hypertechnical issue, but look at it in the reasonable and rational manner. Here a reasonable and rational manner to consider and what the jury could find as a rational jury is that the defendant is holding a gun and the defendant carrying the gun in his vehicle. And again, this is not a case where a defendant has to give up one constitutional right to secure another. Instead, the defendant is faced with a lawful choice between two courses of action that each bore potential costs and rationally attractive benefits. It might have been a hard choice, but litigants face those hard choices every day. Difficult strategic choices are not the same as no choices, and the Constitution does not forbid requiring defendants to make them. That is it. Courier at 503. Do your honors have any other questions? If you wish to make a final remark. Again, cases applying collateral estoppel in criminal cases were well before Courier. The difference is that the severance was by the choice of the defendant, and that was also before the cases allowing inconsistent verdicts in Powell and Jones. My opposing counsel mentioned the decision in Hurley, I believe, and that certainly is well before Courier. It is well before Powell and Jones. Again, Thompson is a more current case. In that case, the defendant both had actual possession and he carried the weapon in his car. So again, those can be proven by separate facts. We ask the court to affirm the trial court's decision. Counsel? Your honors, just to touch on a few brief points. First, regarding jurisdiction, whether or not Courier is dispositive of this case does not alter this court's jurisdiction. Courier certainly doesn't speak to Illinois Supreme Court Rule 604-F, which says you have jurisdiction to appeal the denial of a motion to dismiss on grounds of former jeopardy. And as cited both in the reply brief and in the objection to the state's motion to dismiss, courts have repeatedly reviewed collateral estoppel and issued preclusion claims under 604-F. Turning to the question of carrying and possessing it, I would just point out that the State's hypothetical where the State says, you know, if Justice Burkett carried a firearm to Justice Kennedy, that would be an example of how he could carry it. Or it would also be an example of how he's possessing it while he's carrying it. Certainly if that fact pattern went before a jury and Justice Burkett was charged with possessing the firearm and the jury found that he didn't possess it, there would be no logical way to find that he carried it, but he didn't possess it. And again, the jury is instructed on the issues and the elements, and it's presumed the jury follows the instructions. So no rational jury finding that the defendant did not possess a gun would then find he did carry it. It's a logical inconsistency that the Venn diagram just doesn't carry, does not exist outside of possession. And then to briefly touch on the State's argument that Jones and Powell show that collateral estoppel can't apply or be an inconsistent verdict, I think it's important to note that in People v. Jones in the Illinois Supreme Court case, there the Supreme Court, to the extent I cite to that case, the Court just simply states the collateral estoppel test. The State Court says the issue was raised and litigated. This Court's aware, I won't repeat it, but it cites the collateral estoppel test. The United States v. Powell, again, deals with inconsistent verdicts. And to the extent Jones adopts Powell in that you can't challenge a conviction solely on the basis that it's inconsistent, again, it has no relevance to the issue here. We're not dealing with inconsistent verdicts. And if this Court has no further questions, I would like to move on to the next case. I would just ask again that for the reasons discussed, this Court reverse the trial court's denial of Collins' motion to dismiss the severed weapons charge. Thank you.